The next case today is Blackstone Headwaters Coalition, Inc. v. Gallo Builders, Inc. at all, appeal number 19-2095. Mr. Vandersom, please proceed when you're ready. Good morning. May it please the Court, James Vandersom for the Blackstone Headwaters Coalition. This Court should reverse the District Court's grant of summary judgment to defendants on both count 1 and 2 of plaintiff's complaint and should reverse the District Court's denial of summary judgment to plaintiff with respect to count 2 of this complaint. I'd briefly like to address count 1 and then move on to count 2. As to count 1, a citizen may sue under 33 U.S.C. section 1365, may sue for any violation of a NIPTES permit condition. In count 1, that's what plaintiff has done. Plaintiff has alleged that defendant Gallo Builders is operating this construction site without a permit in violation of the construction general permit. Defendants have sought to analogize this case to Paolino, this Court's case in Paolino v. J.F. Realty, LLC. I think that is an exceptional and easily distinguished case, Paolino, for the reasons stated in my briefing. And if there are no questions on count 1, I would rest on my briefing as to that count and move on to count 2. Just on count 1, I guess I'm having trouble getting my head around it in the following respect. There's no question, at least as I understand it from the record, that the people that are running Gallo and the people that are running Arboretum are one and the same. That's correct. Okay. Does the record tell us whether Gallo was operating on the site? At this point, I don't think the record, the record is not clear on that point. Okay. And is that, just so I understand the contention, how important is that? Because it seems to me one possibility is if Gallo is not operating, then there's no But as I understand the way the district court seemed to decide it was that by treating it as a technical violation, they seemed to treat Gallo as if it was operating and nonetheless treat it as technical. That does seem to me problematic. But your position, I take it, then might support vacating and remanding. And then if there's a finding that Gallo is not an operator at all, well, obviously they can't be a violator. Would that make sense? I think it might, Your Honor. The allegation, count one, is that they are an operator and that they don't have a permit. Discovery as to that issue of whether in fact they are operating the site has not been conducted. So that would remain an open question. The difference between that and Paolino is that in Paolino there was really just one company with two names. Here we have two companies with two names. That's correct. In Paolino, what you had is a trust, which was the permittee. And then the proper permittee was an LLC that was set up by the same individual who controlled the trust. Here you have two companies controlled by the same individuals, one Arboretum Village LLC and the other Gallo Builders. At the time of Paolino, there was only one entity. Everybody agreed there was only one entity in existence. Here you have two entities. That's correct. And again, reading the district court's opinion on that, which is quite thorough, there was a bench trial in that case. I think it's quite illuminating on the facts of Paolino. I'll ask just my own clarification. What is your position with respect to the MAS DEP? Are you saying that the MAS DEP is not the relevant authority, but EPA is? Yes. In Massachusetts, EPA is the administrator of the NIPTES permit program. Massachusetts is one of a handful of states, Rhode Island is not one of them, where EPA remains the administrator of the NIPTES permit program. DEP has absolutely no authority to enforce the terms of a Federal Clean Water Act permit. So the relevant authority, the authority that needs to know who is operating a site here is EPA, not MAS DEP. If there are no more questions as to count one, I... My last question on that point, if the two entity point is right, your position stands whether or not DEP or EPA was responsible for determining who had the permit, isn't that right? Well, even, yes. My position is the same. Even if it, well, even if MAS DEP were the permitting authority, my position would... Even if you knew that there was, it still doesn't change the fact that they didn't have a permit if it was a separate operator. Exactly. Yeah. Okay. As to count two, so there are four reasons why that I have argued here in my briefing as to why section 1319 G6A2 should not preclude the citizen suit in this case. First, same violations. And this was an argument that was made in opposition to motion to dismiss early in the litigation and was not actually made at the summary judgment stage. As I've argued in my reply brief, I still think this court has discretion to consider this issue. But again, it was actually argued at the motion to dismiss stage. And the judge's order on that motion suggested that it would have been pointless for plaintiff to argue this at the summary judgment stage. Anyway, same violations. We have here MAS DEP alleging three specific days of silt-laden discharges from this site in June of 2013. Plaintiff, in May of 2016, files this complaint alleging that since that time, since those three days in June of 2013, that the site has been in violation of CGP, construction general permit provisions, with respect to the design, the installation, the monitoring, and the maintenance of this site. These prophylactic provisions, if you will, of the construction general permit. Plaintiff alleges in its complaint that defendants have been violating these for the subsequent three years. That is after the facts alleged in DEP's orders. These are different kinds of violations. And if you look back at Cituate, the seminal case in the First Circuit on the meeting of 13-19, the citizen in Cituate was suing for precisely the same thing that the state had gone after the defendant town for. And that was an unpermitted discharge from a wastewater treatment plant of wastewater to an adjacent water body. It was precisely the same thing. Literally, the same violation, the same conduct, exactly. That's not, in the district court case in the First Circuit since Cituate, have essentially insisted that there must be a match between the allegation, the conduct that is alleged by the citizen, and the conduct that has been alleged by the state or EPA, as the case may be. These are simply different types of violations. What DEP has gone after is three specific days on which silt-laden stormwater was being discharged from this site in violation of state regulations under the State Wellness Protection Act. In contrast, plaintiff has alleged that these prophylactic provisions have been chronically violated at this site. With the prophylactic conditions that you contend were violated and that ground the violation you're now seeking to bring, to identify on your citizen suit. Were those violations the result of prophylactic action that was ordered to address the prior violations? In other words, was the prophylactic violations, were the violations flowing from the prophylactic actions, the consequence of prophylactic actions that were taken in response to the enforcement of the three prior discharges? I don't believe so, Your Honor. The order of MAS DEP as embodied in this UAO and this ACOP from 2013 and 14, it's not specific as to prophylactic measures that must be taken. It speaks in this very generic language of all reasonable measures must be taken to avoid, for example, future violations of the Massachusetts Wetlands Protection Act. It doesn't specifically set forth what you must do by way of prophylaxis, by way of prevention. Again, if you could clarify this, you seem to be suggesting that the MAS DEP issued orders. Do you agree with that? Yes. Correct. Yes. So, if they issued orders, why were they not the appropriate authority to prosecute the less precluding Blackstone suit? Well, I think that may get into the comparability issue. Maybe I should turn to the comparability issue. So, in order for this section... Before you turn to that, so I'm sure that I understand the significance of the DEP issue. On count one, your contention is DEP does not administer the GCP, only EPA does, correct? Absolutely. On count two, are you suggesting that DEP enforcement cannot count as diligent prosecution? Not exactly, Your Honor. So, now turning to this issue of diligence... I didn't mean to get diligent in particular, but I'm just saying... I'm not saying that categorically a MAS DEP action could not constitute diligence. I am saying that a MAS DEP action under the Wetlands Protection Act cannot constitute under a comparable state law. I get that, but is there a reason why DEP is relevant at count two, but not at count one? That would just help me if I could understand what the statutory structure is making it so that only EPA matters for count one, but DEP might matter for count two. Well, Your Honor, I might argue that DEP... I might argue that DEP... I haven't argued that DEP is completely incapable of taking the sort of action that is contemplated by this preclusionary provision. Because, again, Massachusetts has not assumed authority for the NPDES permit program. So, all that MAS DEP has at its enforcement disposal... In situate, was the order that constituted the thing that made it so it wasn't the same violation a DEP order? It was. Okay. So, DEP certainly can play a role. That's right. And this is actually important to understand situate. What happened... So, for wastewater treatment plants, this has historically been done in Massachusetts, there are permits that are jointly issued by EPA and DEP. The same exact permit, the document will say this is being issued by both EPA and DEP, and it's EPA's permit under the Clean Water Act, and it is DEP's permit under the Massachusetts Clean Waters Act. Was that true in situate? In situate, MAS DEP was acting under the Massachusetts Clean Waters Act, and, of course, among other things, that's a comparable state law. So, they are acting in situate, not under the CWA. I understand, but they weren't acting with EPA, that was just DEP alone. That was DEP alone. I'm just saying, so we know from situate that even if your position on count one is right, that DEP doesn't matter, EPA alone does. When we get to count two, DEP can take action independently that could be preclusive. Pursuant to situate, yes. Okay. Yes. So, with that out of the way, then, I mean, now you go ahead. Can I ask just one quick question? You also seem to be arguing that situate should be reversed. I'm certainly arguing that. Again, that's a decision of a panel of this court. It's in some sort of bon-bonk review. I defer to my First Circuit brethren here on that issue. If I may, Your Honor, yes. Certainly, as a general proposition, and I'm only arguing reversal of situate with respect to the fourth argument that I make with respect to the preclusionary provision, and that is, I'm arguing that this can only apply to a civil penalty action of a citizen, not to one that involves a request for injunctive or declaratory relief. But in any case, it is true, Your Honor, that this court's precedents say, look, one panel can't simply overturn another panel's decision. This horizontal stare decisis. However, if you would go back to the, since the, that's limited to a question of remedy, versus damages, versus, yeah, equitable. But the bigger ticket item that you're pushing is that it's not precluded at all because of same violation and because of not a comparable law. On same violation. And diligence. Yeah, and on same violation, I think we've now worked out that at least given the part of situate that you're not challenging is good law. We have to look at potential DEP action as preclusive action. That's correct. Okay, so now just going back to the question I was asking, the DEP action that was taken with respect to those initial discharges, did the remedy that it, or the corrective action that it required, reasonably contemplate the prophylactic action that was then taken and that you're then saying led to subsequent violations? That's just a yes, no question. I think no. Okay. If it's a yes, can you still win? Well, I think so. Again, there are... I understand how you can win if it's no. But if it's yes, it's less clear to me under situate that you can win. On the same violations issue? Yeah. I would agree that that might complicate the same violations. I don't think that would speak to comparability and diligence. I understand. It's just with respect to same violations to play out the string. Yeah, I think that might complicate... Is there a way to say that you could win on same violations if that initial DEP action contemplated the prophylactic action that was then taken that led to the violations you're now complaining about? I think you still could because the fact remains that you must have a prosecution of an action for the same violations. And whatever might have been embedded by way of prospective orders in those DEP orders with respect to prophylaxis, there's never... That's simply not the violation with respect to which the state has acted. The state has acted with respect to these violations involving pollution per se. In contrast, the plaintiff here is acting with respect to the causes, if you will, of that pollution, the failure of the preventive measures or the prophylactic measures. If I could get to diligence, which takes up a lot of the briefing here, and I think this is very important. Counselor, I'll give you a minute. Thank you, Your Honor. This court in situate did not look at the agency's conduct in a vacuum in determining that the agency had been diligent. The court looked at both the conduct of the defendant and the agency, and that's just a matter of logic. You can't evaluate whether an agent in agency is being sufficiently diligent in enforcing an order without knowing what is happening. The more violations of an order, the more enforcement is warranted. This is right there in situate, and this is, again, the district court cases in the First Circuit that follow it, consistently speak to this principle. They refer to both what the defendant is doing and what the agency is doing. In this case, what the district court did with this diligence analysis is it totally disregarded what was happening at the site. What was happening at the site was, by all accounts, including DEP's own analyst, they were in violation of these enforcement orders, and DEP, for reasons that are not clear, ultimately was ratifying, was saying, you're not. To defendants, they were ratifying the conduct by saying, no, you are not in violation of the ACOP. That was happening in March twice of 2016. Can I just ask you a question about that and what diligence means? There's at least two different types of diligence or failures that I can imagine. One is, I don't dispute that there was a violation, and we're slow getting there, and there's this fight about how, you know, much we were trying to do. Another type is, we don't think there's a violation, so it's not a lack of diligence. We just were of the view there was no violation at all. That seems to be more what you're describing this situation as being, the latter type. It is the latter type. I was having trouble finding case law that says, when an agency, in good faith, takes the view there's no violation, that that constitutes a lack of diligence. I would just dispute that this is good faith, your honor, because, again, the agency's own analyst was finding this site in violation. Six to eight times the analyst testified at his deposition, I have found the discharge to be over 150 NTU, that being a violation of the ACOP. So, DEP's analyst, the guy who actually went to the site, knew they were in violation, but somehow, when this got up to the higher level, that is, the wetland section chief, Denise Child, essentially, the findings, the factual findings of violation, were somehow vetoed, if you will. So, the agency itself here knew of violations, and yet, at the same time, inexplicably, that Denise Child was telling this gentleman, Robert Gallo, and the defendants generally, that they were in compliance in March of 2016. And I don't think there are any precedents for this proposition, where you have this agency that is on, we know that they have been finding violations, and yet, they are assuring the defendants that they are not in violation. And this is not simply condemnation of violations, this is, I think, ratification of violations, and I think this sets this case apart from anything you'll find in the case law. All right, thank you, counsel. Mr. Jalkut, we'll hear from you now. Thank you, Your Honor. May it please the court, I have the privilege of representing the appellees in this matter. Excuse me, Mr. Jalkut, could you check your video feed? See if you can turn on your video. Is that better? There you are, thank you, sir. Continue. I bet. The argument that you just heard, which essentially is a factual argument, that there were violations at this site, is contradicted by the record. The complaint essentially cites alleged violations in the February 2016 time frame. And in the record, we have testimony from the same analyst that my brother just referred to, Mr. Bellino, is saying in January, no violations on January 5th. January 19th, no violations through March. And then in April, Denise Childs sent out a team of analysts to do some tests to see if there were violations. And on April 12th, that team came back and said no violations. So these alleged violations are bracketed by express findings from the DEP that there were no violations. And you undoubtedly saw the testimony in the record from Denise Childs, in which she testified she came to the conclusion that there were no violations, certainly no provable violations, and she exercised her discretion not to bring an enforcement action. And the plaintiff is upset about that. What the plaintiff essentially is arguing, that Denise Childs, the chief of the wetlands section of the DEP, is not entitled to any deference whatsoever with respect to her determination that there were no provable violations at the site. So much like the cases talk about, Gwaltney case and Scituate case, we have a plaintiff here seeking to substitute its own judgment for the judgment of the regulatory state agency. This isn't a case of the DEP ignoring this site. This isn't a case of it not following up with respect to complaints. Here's one thing that just seems odd to me. Usually in a preclusion claim, the idea of preclusion is that we avoid the merits. Right? Yes. The ground you're giving would mean that we'd be resolving the merits. I'm responding to the argument made by my brother. I'm just saying that it just seems strange that the way we would resolve the preclusion claim is by deciding whether the agency is right that there's no violation. I don't see it quite that way, your honor. It must have something to do with the standard that's different somehow. So in other words, if we rule for you and we say we owe Childs deference to say that there's no violation, what would that mean going forward if the agency wanted to do something? Would the agency now be bound by our ruling that there's no violation? I think not. The agency is not really a party to this case. I bring up these points only in the context of diligent prosecution. The plaintiff has made at every opportunity an argument that DEP has been asleep at the wheel. That hasn't been diligent in prosecuting. Here's what that just takes me back to the question I was asking your opponent, which is the typical form of diligence or not taking a diligent action is everybody agrees there might be a violation and then one party is slower than the other party in doing something about it. Then the question is, are they too slow? This is a pretty different situation because one party is saying there is no violation. So it's not like they're going to get to it. They don't think there's a problem. The citizen bringing the citizen suit says I think there is a problem and there's every reason to believe that the agency doesn't think that there is and is never going to do anything about it. What are we supposed to do in that situation? That's the heart of it for me. There clearly was a problem in 2013 when the DEP intervened with its UAO. Going forward after that, my client denies any subsequent violations, but my client recognizes that the city of Worcester and others made complaints to the DEP about violations. The DEP went out and researched these complaints and found there were none. So our position is there were none. There's got to be some standard by which we assess that where if the agency is completely wrong about that, that shouldn't preclude the citizen from bringing the suit. I don't see why that would be. It can't be just because the agency says no violations and that's the end of it and that's preclusive. What standard do we apply in assessing whether the decision by the agency is the kind of decision that could be preclusive? The case law talks about whether or not the agency has been dilatory, collusive, bad faith, terms like that, but I don't think that answers your honest question. Here, the agency had an objective, rational basis due to its checking out the site's conditions to come to the conclusion that there were no violations and that no enforcement action was warranted. I think what your honor is asking me is can a court just fundamentally disagree and say yes they were, you failed to act, therefore you get no deference. I think you could if you came to that conclusion, but I'm not sure on this record how you could come to that conclusion. Could I ask a question about count two just for my basic understanding? Why isn't the existence of a wetlands protection law separate from the clean water laws not indicative that Blackstone is not suing for the same violation for purposes of Section 1319 preclusion? Blackstone most definitely is suing for the same violations. Blackstone basically is saying in its complaint that there continues to be storm water runoff at that site just as the DEP found occurred in 2013. There's no difference. In fact, this is the case in Scituate where if you recall the DEP found violations and then in the opinion the panel pointed out that there were subsequent violations of the same nature over the following two years that resulted in the citizen suit complaint that was dismissed. As I read Scituate, that's because the relief or the remedy that DEP ordered in Scituate contemplated future violations and provided a course of action that had to be taken with respect to what would happen in the future. As I understand your opponent's argument, we don't have that here as clearly from what DEP did with respect to the 2013 discharges. I have nothing but the highest respect for my opponent, but I disagree with his position. If you look at the ACOP, you will see that it explicitly addresses the potential for future violations and what the penalties can be and what the enforcement remedies can be. It most certainly does contemplate a possibility of future violations. Is that a foundation for your claim? In other words, if that's not true, then you would agree that it's not the same violation? I think it's a foundation to my claim that it's a comparable statute. Yes, I'm sorry for stumbling over my own words. Yes, I agree. On the Wetlands Protection Act, to go back to Judge Katzmann's question, which is, I take it, not about same violation but about comparable statute. Correct. We briefed this issue. We believe that it is comparable. We don't think you have to reach that issue because of the Massachusetts water quality standards that are promulgated under the Massachusetts Clean Water Act and that are expressly referenced in both the UAO and the ACOP. But if you disagree, if the panel disagrees with that, then we would argue that the Massachusetts Wetlands Protection Act certainly satisfies the standards for what in situate in other cases for a comparable state law. But I don't think you have to reach that. Is there any case finding something other than a state clean water act to be a comparable statute? I confess I do not know the answer to that question, Your Honor. Because it's sort of a significant ruling if we're the first one ever to say something other than a state clean water act is comparable to the federal clean water act. I don't see that as a significant leap for the court. The situate in the other cases spell out the standard. What qualifies as a comparable state law, what label a particular state puts on its statute, whether it calls it the Missouri Clean Water Act or the Missouri Wetlands Protection Act really shouldn't matter. It's whether the elements of the statute fall within that description that is set forth in situate in Gwaltney and the other cases, whether it contemplates future remedies in the event of future violations, whether it goes to the issue of protecting water quality. That's the analysis, not the title of the statute. I just have one last question, Chief Judge Howard. Yes, of course. On count one, could you just address the, we went over with your opponent, why his position is that this is not like Paolino because there were two companies as opposed to only one company with two names. How do you answer that? It would seem to me that if you show that Gallo was not an operator, it would be no violation, but that seems rather different than finding it's just a technical violation without finding that Gallo was not itself an operator. Correct. Our position is and has been from day one that Gallo was an operator. Has not and is not an operator at that time. Moving past that issue, the plaintiff is claiming that it is. We cited Paolino for the larger point that we're one entity under common control. Does that make sense? Your audio for me is not very good. I don't know if it's true for the other judges. Let me start again. We cite Paolino for the larger point. Excuse me. Could you mute your mic and then unmute it again? We'll try one more time before we turn to for technical assistance. It is unmuted. Is that better? Why don't you hold on one minute? Hi, Judge. Hi, Judge. It's Dan here. I'm wondering if IT has any opinion on the audio situation with counsel? Could we pause the YouTube stream, please? All right. Mr. Jockett, you may proceed. Thank you, Your Honor. The appellees cite Paolino for the broad point that the court disfavors a citizen suit action where there is a comparable state prosecution action and it's been diligently prosecuted and where if there are two entities at the site and one of them has the necessary permit and the failure of the second entity to have the permit should be disregarded. I certainly understand the distinction being drawn between Paolino where it was a name change and our situation where we have two separate companies. But as a practical matter, in the context of what the court is trying to accomplish with Paolino, it's a distinction without a difference. If the necessary permit is there and a second alleged operator doesn't have one, it's a technical violation and it shouldn't be the subject of a citizen suit given the prior announcements of this court and the Supreme Court. What about the fact that it's not just two separate entities that may or may not be controlled by the same people, but it's two separate enforcement agencies here? As I understood the record, we do not know, inconsistent with Paolino, that EPA knows the connection between the gallows and GBI. The record certainly is not clear on that point, Your Honor. I argue that the issue under Paolino is not which federal or state agency issued the permit. It's whether the state agency that's regulating the site, that is supervising the stormwater erosion at the site, knows about the two entities. In this particular case, that's the DEP. I don't read Paolino necessarily to say it has to be the permit issuing authority that knows about both entities. I read Paolino to say if the regulating agency knows what's going on at the site and knows there are two entities out there, that's sufficient. Can I ask you about that? Suppose the regulating entity knows there's only one contractor out there and it knows it's operating and it knows it doesn't have a general permit. Is that just a technical violation? I think that goes to the question of whether the DEP has any authority to bring an action under the federal Clean Water Act for the absence of the CGP permit, which is not the situation we have here. I don't think that's the issue in the case, Your Honor. I know that. I'm asking what your answer to that is. Does it matter? No. I think that has to be your position, but I think the struggle with it suggests that maybe it's a concern. I appreciate your answer, but I think that logically that would seem to me that is your position. It doesn't matter if there's two companies. All that matters is that you never have to have a general construction permit because that's just a technical violation. As long as one of the entities does have one. Well, if there's only one entity there... In your question... I'm sorry to interrupt you. There's only one entity in your hypothetical. In reality, in this case... I'm saying if there were only one, is your position it's just a technical violation not to have the permit? I'll say no. Much like the case law talks about these are closed calls, that's a closed call, Your Honor. One of the arguments made about count one is that if the court were to accept the appellee's argument, it would encourage shell companies to be set up that are judgment-proof. That's just not true. Under the Clean Water Act, we have personal liability. Robert Gallo and Stephen Gallo are defendants in this case. What incentive would they have to set up shell companies if they're going to remain personally liable? Zero. So that argument is a little bit disingenuous and not persuasive. Thank you to both counsel. Thank you. Good morning. That concludes argument in this case. You should disconnect from the hearing at this time.